[Cite as *State ex rel. Carna v. Teays Valley Local School*, 2011-Ohio-1522.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY


STATE EX REL. STACEY L. CARNA,      :

    Relator-Appellant,      :      Case No.   10CA18

    vs.      :

TEAYS VALLEY LOCAL SCHOOL,      :      DECISION AND JUDGMENT ENTRY


    Respondent-Appellee.      :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Frederick M. Gittes and Jeffrey P. Vardaro, 723 Oak Street, Columbus, Ohio 43205

COUNSEL FOR APPELLEE:      Richard A. Williams and Susan S.R. Petro, 338 South High Street, Second Floor, Columbus, Ohio 43215

_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 3-17-11

ABELE, J.

{¶ 1}   This is an appeal from a Pickaway County Common Pleas Court judgment that denied the petition for a writ of mandamus filed by Stacey L. Carna, relator below and appellant herein.

{¶ 2}   Appellant raises the following assignment of error for review:

> "THE TRIAL COURT ERRED AS A MATTER OF LAW IN
> DENYING THE APPELLANT'S PETITION FOR A WRIT OF
> MANDAMUS WHERE THE APPELLEE FAILED TO PROVIDE
> A MEETING WITH THE SCHOOL BOARD UPON THE
> APPELLANT'S REQUEST BEFORE NONRENEWING THE

APPELLANT'S EMPLOYMENT CONTRACT, AS REQUIRED
BY OHIO REVISED CODE 3319.02(D)(4)."

{¶ 3}   In June 2006, appellant entered into a two-year administrator's employment contract with the Teays Valley Local School District Board of Education (Board), respondent below and appellee herein.   Under the contract, the Board agreed to employ appellant as principal of Ashville Elementary School for the 2006-2007 and 2007-2008 school years.   In May 2007, the Board placed appellant on administrative leave after allegations arose that appellant had tampered with Ohio Achievement Test results during the 2006-2007 school year.   However, a subsequent investigation did not uncover evidence that appellant had tampered with the tests.

{¶ 4}   In a December 15, 2007 written "Adminstative Evaluation" (signed in January 2008), the Teays Valley Local Schools assistant superintendent wrote that he met with appellant in "early June [of 2007] to discuss her status with the district" and that at this meeting, appellant "was told she would not return to the district for the 2007-08 school year and at the conclusion of her contract she would not be recommended for another contract."   A February 25, 2008 written "Administrative Evaluation" similarly informed appellant that "[t]he superintendent intends to recommend to [appellee that appellant's] contract not be renewed for the 2008-09 school year."   Appellant signed both documents, but noted that she did not agree with either.   During the March 17, 2008 meeting, the Board determined not to renew appellant's contract.

{¶ 5}   On February 12, 2009, appellant filed a complaint and requested a preliminary injunction and a writ of mandamus.   She requested the trial court to issue a writ of mandamus to order the Board to "restore [her] to her administrative level position as principal and grant her a renewal of her Administrative Contract at her previous salary, plus any increments."   Appellant

contended that the Board unlawfully non-renewed her contract by: (1) failing to evaluate her in accordance with R.C. 3319.02(D)(2); (2) failing to notify her of her right to meet with appellee regarding her non-renewal; and (3) failing to provide her an opportunity to meet with appellee.[1] The court denied appellant's request for a preliminary injunction.

**{¶ 6}** The parties later filed cross-summary judgment motions regarding the mandamus claim. On March 29, 2010, the trial court denied appellant's petition for a writ of mandamus and entered judgment in the Board's favor. The court determined, in part, that appellant failed to establish that R.C. 3319.02(D)(5) entitled her to reinstatement. Specifically, the court found that appellant failed to show that she requested a meeting with the Board and that the Board denied her request. The court observed that even if appellant verbally requested a meeting on July 11, 2007, when the assistant superintendent verbally informed her that the Board planned to not renew her contract, appellant's request did not constitute "a request in the context of an impending board decision to renew or not renew the administrator's contract." The court thus determined that appellant must have requested the meeting not when she first learned of the Board's intention to not renew, but after the Board began formal contract renewal procedures. The court explained:

> "The statutory scheme contemplates an administrator's requesting a meeting after three things occur: (1) the superintendent or his designee conducts the final evaluation of the administrator; (2) the administrator learns of the superintendent's intended recommendation, as indicated on the final evaluation under division (D)(2)(c)(ii); and (3) the board notifies the administrator of the contract's expiration date and her right to request a meeting. An administrator's request for a meeting during a conversation some seven months before the administrator's final evaluation and the superintendent's official recommendation

---

[1] Appellant also asserted a breach of contract claim, but that claim is not at issue in the present appeal.

to the board is not a basis for alleging a violation of division (D)(4)."

This appeal followed.

{¶ 7}   In her sole assignment of error, appellant asserts that the trial court erred by entering summary judgment in the Board's favor after determining that she was not entitled to a writ of mandamus ordering the Board to restore her to her former position.   Appellant asserts that the Board failed to comply with the R.C. 3119.02(D) mandate to honor her request for a meeting before it took action on her contract, which by operation of R.C. 3119.02(D)(5), requires her reinstatement.

A

SUMMARY JUDGMENT STANDARD

{¶ 8}   Appellate courts review trial court summary judgment decisions de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.   Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate.   In other words, appellate courts need not defer to trial court summary judgment decisions.   See Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law.   Civ.R. 56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   No evidence or

stipulation may be considered except as stated in this rule.   A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶ 9}** Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.   See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164.

B

WRIT OF MANDAMUS

**{¶ 10}** In order for a writ of mandamus to issue, a relator must establish all of the following: (1) that the relator has a clear legal right to the relief prayed for; (2) that the respondent is under a clear legal duty to perform the act requested; and (3) that the relator has no plain and adequate remedy in the ordinary course of the law.   See, e.g., State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28, 451 N.E.2d 225; see, also, State ex rel. Couch v. Trimble Local School Dist. Bd. of Edn., 120 Ohio St.3d 75, 2008-Ohio-4910, 896 N.E.2d 690; State ex rel. Asti v. Ohio Dept. of Youth Servs., 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, at ¶17; State ex rel. Nichols v. Cuyahoga Cty. Bd. of Mental Retardation & Dev. Disabilities (1995), 72 Ohio St.3d 205, 207, 648 N.E.2d 823.   A writ of mandamus is the appropriate

procedural device when a school administrator seeks reemployment, damages, and back pay for the nonrenewal of his or her employment contract.   See, e.g., <u>State ex rel. Martines v. Cleveland City School Dist. Bd. of Edn.</u> (1994), 70 Ohio St.3d 416, 639 N.E.2d 80; <u>State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.</u> (1994), 69 Ohio St.3d 217, 631 N.E.2d 150.

{¶ 11}  In the case sub judice, whether appellant has a clear legal right to reinstatement depends upon the meaning of the request provisions contained in R.C. 3119.02(D).   Thus, the crux of this case is whether appellant's July 2007 request to meet with the Board constituted a request for "a meeting as prescribed in division (D)(4)."

C

R.C. 3319.02(D)

{¶ 12}  The relevant R.C. 3319.02(D) language that we must interpret provides:

> (4) Before taking action to renew or nonrenew the contract of an assistant superintendent, principal, assistant principal, or other administrator under this section and prior to the last day of March of the year in which such employee's contract expires, the board shall notify each such employee of the date that the contract expires and that the employee may request a meeting with the board. Upon request by such an employee, the board shall grant the employee a meeting in executive session.   In that meeting, the board shall discuss its reasons for considering renewal or nonrenewal of the contract.   The employee shall be permitted to have a representative, chosen by the employee, present at the meeting.
>
> (5) The establishment of an evaluation procedure shall not create an expectancy of continued employment.   Nothing in division (D) of this section shall prevent a board from making the final determination regarding the renewal or nonrenewal of the contract of any assistant superintendent, principal, assistant principal, or other administrator.   However, if a board fails to provide evaluations pursuant to division (D)(2)(c)(i) or (ii) of this section, or if the board fails to provide at the request of the employee a meeting as prescribed in division (D)(4) of this section, the employee automatically shall be reemployed at the same salary plus any increments that may be authorized by the board for a period of one year, except that if the employee has been employed by the district or service center as an assistant superintendent, principal, assistant principal, or other administrator

for three years or more, the period of reemployment shall be for two years.

D

STATUTORY INTERPRETATION

{¶ 13} The rules regarding statutory interpretation are well-established.   In Washington

Cty. Home v. Ohio Dept. of Health, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, at

¶¶27-29, we set forth the analysis that we apply when interpreting a statute:

> "The interpretation of a statute involves a purely legal question.   Thus, we conduct a de novo review of a trial court's judgment interpreting a statute and afford no deference to the trial court's interpretation of a statute.   See, e.g., Oliver v. Johnson, Jackson App. No. 06CA16, 2007-Ohio-5880, 2007 WL 3227668, at ¶5.
>
> In construing a statute, a court's paramount concern is the legislature's intent in enacting it.   See, e.g., State ex rel. Cincinnati Enquirer v. Jones-Kelley, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, at ¶17; State ex rel. Russell v. Thornton, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶11.   "'The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act * * * .'" State ex rel. McGraw v. Gorman (1985), 17 Ohio St.3d 147, 149, 17 OBR 350, 478 N.E.2d 770, quoting Wachendorf v. Shaver (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus.   To determine legislative intent, a court must "'read words and phrases in context and construe them in accordance with rules of grammar and common usage.'"   Id., quoting State ex rel. Russell v. Thornton, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶11.   "'In construing the terms of a particular statute, words must be given their usual, normal, and/or customary meanings.'" Proctor v. Kardassilaris, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶12.

{¶ 14} When the language of a statute is plain and unambiguous and conveys a

clear and definite meaning, there is no need to apply rules of statutory construction.   Id.;

see also Cline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d

77; Sears v. Weimer (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph

five of the syllabus.   However, when a statute is subject to various interpretations, a court

may invoke rules of statutory construction to arrive at legislative intent. R.C. 1.49; Cline,

supra; Carter v. Youngstown (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63,

paragraph one of the syllabus."

E

ANALYSIS

{¶ 15}  In the case at bar, we agree with the trial court's conclusion that appellant's July

11, 2007 request did not constitute a request for "a meeting as prescribed in [R.C.

3319.02(D)(4)]."   Appellant's July 11, 2004 request occurred in response to the assistant

superintendent's statement, made approximately one year before her contract was set to expire,

that the Board planned to not renew her contract.   After that notification, appellant received at

least two written administrative evaluations that, in essence, notified her that her contract would

not be renewed.   Both of these evaluations occurred in the year that her contract was set to

expire.   After she received these evaluations, she did not request a meeting with the board.

R.C. 3119.02(D)(4) governs a request for a meeting made "[b]efore [the board] tak[es] action to

renew or nonrenew the contract."   Although appellant's request in July 2007 occurred before the

board took action to renew or nonrenew her contract, we agree with the trial court that the statute

implies that the request must occur not at any time before the board takes action, but at a time

reasonably related to the board's impending decision.   To hold otherwise, as appellee argues,

means that an administrator could request a meeting with the board the day after the

administrator is hired under a two-year contract, then sit on that right until the board takes action

on the contract, only to then complain that the board failed to honor the request for a meeting

made nearly two years earlier.

{¶ 16} We further agree with the trial court's analysis that appellant's July 2007 request is not the type of request that the statute contemplates:

> "The conversation of July, 2007, took place before the commencement of any contract renewal procedures under R.C. 3319.02(C) or (D). Division (D)(5) refers to an administrator's request for 'a meeting as prescribed in division (D)(4),' which the court interprets to mean a request in the context of an impending board decision to renew or not renew the administrator's contract.

> The statutory scheme contemplates an administrator's requesting a meeting after three things occur: (1) the superintendent or his designee conducts the final evaluation of the administrator; (2) the administrator learns of the superintendent's intended recommendation, as indicated on the final evaluation under division (D)(2)(c)(ii); and (3) the board notifies the administrator of the contract's expiration date and her right to request a meeting. An administrator's request for a meeting during a conversation some seven months before the administrator's final evaluation and the superintendent's official recommendation to the board is not a basis for alleging a violation of division (D)(4)."

{¶ 17} R.C. 3319.02(D)(2)(ii) requires that a preliminary and a final evaluation be conducted in the year that the administrator's contract is due to expire. The final evaluation must indicate the superintendent's intended recommendation to the board regarding the administrator's contract. R.C. 3319.02(D)(2)(ii). The board must consider these evaluations when deciding whether to renew the administrator's contract. Id. Thus, without these evaluations, a board cannot take action on the administrator's contract. Not until the final evaluation does an administrator receive formal notice as to whether the superintendent will

recommend contract renewal.   Construing the statute as a whole, we believe that it is the preliminary evaluation and the superintendent's intended recommendation that triggers the administrator's right to request a meeting with the board, except in those circumstances when the board notifies the administrator of the contract expiration date.[2]

{¶ 18} Although we recognize that appellant may deem our interpretation of the statute constrained, we believe that our interpretation comports with the plain meaning and intent of the statute.   We do not believe that the statute intends to cover any request made at any time, but rather, we agree with the trial court that the request must occur in the context of an impending contract renewal.   We do not believe that a request that occurs after an informal verbal notification from an assistant superintendent nearly one year before the contract expires constitutes the type of request for a meeting that the statute contemplates.   If the legislature intended a different result, it possesses the authority to amend the statute and to clarify its intent.

{¶ 19} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

---

[2] Apparently, no dispute exists in the case at bar that the Board did not provide appellant with written notification of her contract expiration date or of her right to request a meeting.    Both parties appear to agree that neither of these failures justifies appellant's reinstatement.    See State ex rel. Butler v. Fort Frye Loc. Sch. Dist. (Mar. 13, 1995), Washington App. No. 93CA31.

It is ordered that a special mandate issue out of this Court directing the Pickaway County

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

Harsha, P.J. & McFarland, J.: Concur in Judgment & Opinion

  For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.