[Cite as *K.N. v. Render*, 2019-Ohio-3981.]

STATE OF OHIO     )          IN THE COURT OF APPEALS
                       )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA     )

K. N.

     Appellee

     v.

ZACHARIAH RENDER

     Appellant

C.A. No.     19CA0018-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     18CIV0564

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

CARR, Judge.

{¶1}     Respondent-Appellant Zachariah Render[1] appeals the judgment of the Medina County Court of Common Pleas granting a civil stalking protection order.  This Court affirms.

I.

{¶2}     H.N. met Mr. Render through a mutual friend, Steve.  According to H.N., she and Mr. Render began dating sometime before Christmas break in 2017.  From the record it appears that both H.N. and Mr. Render attended school together.  Approximately a month into their relationship, the two were driving in Medina and talking.  When H.N. brought up making Mr. Render angry, he replied, "[j]ust don't forget, if you piss me off enough, I will not hesitate to beat your face in."  H.N. testified that made her feel "[t]errified because shortly after that, he stated that he's not afraid to hit women[.]"  On multiple occasions, Mr. Render told H.N. that he

---

[1] The judgment entry and other court filings list Mr. Render's first name as "Zacharia[.]" As, in his filings, he uses the spelling "Zachariah[,]" we have as well.

had a knife in his trunk and at some point mentioned having a gun. According to H.N., "[i]mmediately" after Mr. Render made those statements, H.N. knew she needed to end the relationship. However, "[i]t took [her] probably about three weeks to actually end it [because she] was just too scared to do it by [her]self or do it in a public place so [she] didn't know how to do it[.]"

{¶3} While H.N. and Mr. Render were dating, H.N.'s brother testified that he and Mr. Render went to H.N.'s place of employment. Mr. Render and H.N.'s brother were talking when Mr. Render "pulled out probably a 10 or 11-inch machete out of his waistband[.]" This concerned H.N.'s brother and he shared his concerns with H.N. H.N. also expressed to her brother that she had concerns about Mr. Render as well.

{¶4} In February 2018, H.N. sent a text message to Mr. Render to break up with him. That evening Mr. Render posted a message on Instagram which H.N. saw. That post stated:

> Dearest whom it may concern, I thank you. Life is now much more fun. I should have snapped a long time ago. You thought my insanity was bad before, oh, you just wait. It has amplified itself tenfold. Life now goes by it 10,000 miles an hour and I see every possible outcome. This way of life is much more fun. I thank you for showing me. I thank you for breaking me so low that I could discover this life. No, this is not the night of my death but the night of my birth, a new beginning with a new life set that I could never have experienced before. Thank you.

(Sic.)

{¶5} H.N. felt threatened by the post and explained that was why it was reported to the school. After the break up, one day when H.N. drove by Mr. Render's workplace, Mr. Render was outside and "flipped [her] car off and went back to work."

{¶6} In May 2018, in the evening, H.N. heard a loud car near her driveway revving its engine and circling around. She could also hear talking and laughing. She heard Steve's voice but believed that Mr. Render was with Steve even though she did not see either person. This

incident caused H.N. to panic. She contacted Petitioner-Appellee K.N., who is her mother, and her brother and both told her to call the police, which she did. This incident led K.N. to file for a civil stalking protection order on May 31, 2018, on behalf of her children.

{¶7} An ex parte civil protection order was granted that same day. A full hearing was held before a magistrate, at which H.N., her brother, K.N. and Mr. Render testified. Mr. Render admitted to creating the Instagram post but denied H.N.'s other allegations. Mr. Render presented evidence that he was not near H.N.'s house at the time the car was revving its engine near her driveway.

{¶8} On June 26, 2018, a full hearing civil protection order was granted with respect to H.N. Mr. Render filed objections and requested a transcript of the hearing. After the transcript was filed, the trial court overruled the objections. In so doing, the trial court found that there was insufficient evidence to support that Mr. Render was involved in the May 2018 incident involving the car outside H.N.'s house. Nonetheless, the trial court pointed to several incidents which it concluded demonstrated a pattern of conduct, and that, by engaging in the pattern of conduct, Mr. Render knowingly caused H.N. to believe he would cause her physical harm.

{¶9} Mr. Render has appealed the judgment of the trial court, raising two assignments of error for our review. K.N. has not filed a brief in this matter. Accordingly, this Court "may accept [Mr. Render's] statement of the facts and issues as correct and reverse the judgment if [his] brief reasonably appears to sustain such action." *See* App.R. 18(C).

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN UPHOLDING THE CIVIL STALKING
PROTECTION ORDER BECAUSE THE EVIDENCE WHEN VIEWED IN
THE CONTEXT OF ALL RELEVANT FACTORS CANNOT SUPPORT A
FINDING THAT APPELLEE MET HER BURDEN OF PROOF AND

THEREBY THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ISSUING THE CIVIL STALKING PROTECTION ORDER BECAUSE THE TESTIMONY FAILED TO ESTABLISH THAT THE APPELLANT ENGAGED IN A PATTER OF CONDUCT THAT WOULD KNOWINGLY CAUSE THE RESPONDENT [SIC] TO BELIEVE THAT HE WOULD CAUSE PHYSICAL HARM TO THE OTHER OR CAUSE MENTAL DISTRESS.

**{¶10}** While Mr. Render's first assignment of error mentions manifest weight, it appears that in both of his assignments of error he challenges the sufficiency of the evidence presented. In his first assignment of error, Mr. Render maintains that the evidence did not demonstrate that his actions caused H.N. to believe that he would cause her physical harm. In his second assignment of error, Mr. Render argues that there was insufficient evidence of a pattern of conduct that would cause H.N. to believe that he would cause her physical harm.

**{¶11}** K.N. petitioned for a protection order on behalf of her children pursuant to R.C. 2903.214. It was granted with respect to H.N. "[I]n order for a civil stalking protection order to issue under Section 2903.214, the trial court must find that the petitioner has shown by a preponderance of the evidence the respondent committed an act against the petitioner[, or a person designated to be protected under the order,] that would constitute menacing by stalking." (Internal quotations and citations omitted.) *P.S. v. High*, 9th Dist. Medina No. 18CA0008-M, 2019-Ohio-437, ¶ 7.

**{¶12}** R.C. 2903.211(A), the statute prohibiting menacing by stalking, provides:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or

mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

(2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:

(a) Violate division (A)(1) of this section;

(b) Urge or incite another to commit a violation of division (A)(1) of this section.

(3) No person, with a sexual motivation, shall violate division (A)(1) or (2) of this section.

**{¶13}** Pattern of conduct is defined as

two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, or two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, directed at one or more persons employed by or belonging to the same corporation, association, or other organization. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer's, emergency medical services person's, or emergency facility person's official capacity, or the posting of messages, use of intentionally written or verbal graphic gestures, or receipt of information or data through the use of any form of written communication or an electronic method of remotely transferring information, including, but not limited to, a computer, computer network, computer program, computer system, or telecommunications device, may constitute a "pattern of conduct."

R.C. 2903.211(D)(1).

**{¶14}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense,

such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶15} Because Mr. Render challenges the sufficiency of the evidence, "we must determine whether, viewing the evidence in the light most favorable to [H.N.], a reasonable trier of fact could find that [she] demonstrated by a preponderance of the evidence that a civil protection order should issue." (Internal quotations and citation omitted.) *P.S.*, 2019-Ohio-437, at ¶ 7.

{¶16} The trial court found that several incidents occurred which demonstrated a pattern of conduct. They were:

> 1) In January 2018, the respondent told [H.N.] "just don't forget, if you piss [me] off enough, I will not hesitate to beat your face in." []
>
> 2) Shortly after the incident above, respondent "stated he's not afraid to hit women and it just made me ([H.N.]) feel scared and small in the car alone with him." []
>
> 3) The respondent told [H.N.] and others that he had a weapon, namely an "illegal knife[.]" []
>
> 4) The respondent visited [H.N.'s] place of work (a sandwich shop). While seated at a booth with [H.N.'s] brother, the respondent "pulled out probably a 10 or 11-inch machete out of his waistband that he was just carrying with him and that was not very normal." []
>
> 5) In February of 2018, in direct response to [H.N.] ending their relationship, [H.N.] posted a bizarre Instagram message that included: ". . .I should have snapped a long time ago. You thought my insanity was bad before, oh, you just wait. It has amplified itself tenfold. . ." []
>
> 6) The respondent made an obscene finger gesture at [H.N.] when she drove by in her car. []

**{¶17}** This Court does not necessarily agree that each of these "incidents" would satisfy an incident as required by the statute. For example, there was nothing in the record that would suggest Mr. Render's hand gesture caused H.N. to believe he would cause her physical harm nor is there anything in the record to suggest that it caused her to be afraid. Yet, a pattern of conduct only requires two or more incidents. *See* R.C. 2903.211(D)(1). Accordingly, all six incidents listed above would not be required for a pattern of conduct to be demonstrated. Moreover, "[a] court must take everything into consideration when determining if [a person's] conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." (Internal quotations and citation omitted.) *P.S.*, 2019-Ohio-437, at ¶ 8. In addition, "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." (Internal quotations and citations omitted.) *Wagner v. Holland*, 5th Dist. Fairfield No. 15-CA-56, 2016-Ohio-5028, ¶ 30.

**{¶18}** Viewing the evidence in a light most favorable to the petitioner, there was evidence that, by his pattern of conduct, Mr. Render knowingly caused H.N. to believe that he would cause her physical harm. R.C. 2903.211(A). According to H.N., Mr. Render made comments to her in the car which included, "[j]ust don't forget, if you piss me off enough, I will not hesitate to beat your face in[,]" and that he was not afraid to hit women. These comments made H.N. feel "[t]errified[.]" Immediately after Mr. Render made the comments, H.N. knew she needed to end the relationship. However, "[i]t took [her] probably about three weeks to actually end it [because she] was just too scared to do it by [her]self or do it in a public place so [she] didn't' know how to do it[.]" Further, Mr. Render not only made those comments, on

multiple occasions he told H.N. that he carried a knife in his trunk and actually showed a large knife to H.N.'s brother on one occasion. From the wording of the testimony, it appears that H.N.'s brother shared his concerns about this encounter with H.N.

{¶19} Moreover, the night that H.N. ended the relationship via text message, Mr. Render posted a strange message on Instagram. That post, detailed above, included language which could be viewed as threatening, particularly in light of Mr. Render's prior comments to H.N. and given his repeated references to having a knife in his trunk. H.N. testified to feeling threatened by the post and explained that was why it was reported to the school.

{¶20} Mr. Render argues that there was no evidence presented that H.N.'s fear was imminent in light of the fact that the trial court concluded that there was insufficient evidence that Mr. Render was involved in the May 2018 incident which led to the filing of the petition. Mr. Render asserts that the length of time between the last possible incident in February 2018, and the filing of the petition in May 2018, cannot support that H.N. had imminent fears of Mr. Render. Mr. Render notes there is no evidence that he had any contact with H.N. after the Instagram post, aside from the gesture he made when she drove by his workplace.

{¶21} However, Mr. Render has only pointed to cases discussing domestic violence civil protection orders, which involve R.C. 3113.31 as opposed to R.C. 2903.214. *See* App.R. 16(A)(7). The language that Mr. Render relies upon to conclude that "at the time the Petition is filed the fear must then be imminent" actually is based upon language in R.C. 3113.31(A)(1)(a)(ii) which includes "[p]lacing another person by the threat of force in fear of imminent serious physical harm" in the definition of domestic violence. R.C. 2903.214 does not contain the foregoing language. Nonetheless, "[t]he goal of R.C. 2903.214 is to allow the police and the courts to act before a victim is harmed by a stalker." (Internal quotations and citation

omitted.) *Hamlin-Scalon v. Taylor,* 9th Dist. Summit No. 23773, 2008-Ohio-411, ¶ 11. Thus, the issuance of civil stalking protection order is a determination that the protected person is at risk of future harm from the respondent. *See J.P. v. T.H.,* 9th Dist. Lorain No. 15CA010897, 2017-Ohio-233, ¶ 29. However, we cannot say that a risk of future harm is equivalent to "fear of imminent serious physical harm[.]" R.C. 3313.31(A)(1)(a)(ii).

{¶22} Mr. Render maintains that the statute requires that the person to be protected must have a fear of imminent harm in order to be granted a protection order under R.C. 2903.214. However, he has not pointed to any case law that would support that position. *See* App.R. 16(A)(7). Mr. Render has not explained how the evidence was insufficient to demonstrate that H.N. was at risk of future harm. *See* App.R. 16(A)(7). We decline to construct an argument on his behalf.

{¶23} Thus, we conclude that Mr. Render has failed to demonstrate that the evidence was insufficient. Therefore, he has not demonstrated that the trial court erred in concluding that Mr. Render violated R.C. 2903.211(A) and issuing a civil stalking protection order as to H.N.

{¶24} Mr. Render's assignments of error are overruled.

### III.

{¶25} Mr. Render's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

RICHARD J. MARCO, JR., Attorney at Law, for Appellant.

K. N., pro se, Appellee.